UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)    Criminal No. 1:22-cr-00354-RCL-1 and 2<br>RICHARD SLAUGHTER, and )<br>CADEN GOTTFRIED, )<br>)<br>        Defendant )<br>) | |

Defendant.

COMES NOW, the Defendants Slaughter and Gottfried, by and through undersigned counsel, with this Motion to Dismiss all charges in this case (1) on First Amendment grounds, and (2) because the charging instrument and documents in this case fail to state a valid federal criminal case, and thus fail to invoke the jurisdiction of this Court.

THE DEFENDANTS' ALLEGED CONDUCT ON JANUARY 6 WAS POLITICAL EXPRESSION, ADVOCACY, AND PETITIONING, PROTECTED BY THE FIRST AMENDMENT.

In *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963), the Supreme Court held that state capitol grounds are traditional venues for "exercise of . . . basic constitutional rights in their most pristine and classic form." Although the specific time, place, and manner of advocacy, protest, assembly and communication of ideas may be restricted in some circumstances, the conduct alleged by the State in this case falls entirely within protections of the State and federal constitutions.

1

The First Amendment would mean nothing if any government authority could decree that a dissenter or government critic is banned from public buildings and thereafter punish the dissenter for trespassing whenever the dissenter approached. See *Johnson v. Perry*, 140 F. Supp. 3d 222 (D. Conn. 2015) (public school's order excluding parent from school events interfered with parent's exercise of right to make decisions about the care, custody, and control of his child and did not provide him with any means to appeal the order); *Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 297 (D. Vt. 2013) (public school's order that excluded parent from school board meetings interfered with parent's exercise of speech rights and did not provide parent with any means to challenge the order); *Dunkel v. Elkins*, 325 F. Supp. 1235, 1246-47 (D. Md. 1971) (public university's order that excluded visitor from campus interfered with visitor's exercise of speech rights and provided no means to appeal); *Watson v. Bd. of Regents of Univ. of Colorado*, 182 Colo. 307, 512 P.2d 1162, 1165 (Colo. 1973) (public university's order that banned nonstudent from campus interfered with the individual's exercise of First Amendment rights and provided no method for appeal).

**Observing political and legislative meetings and seeking redress of grievances is protected by the First Amendment.**

The rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights.

These rights are intimately connected with the other First Amendment rights of free speech and free press. "The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). "We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil." *Id.*

On January 6, Defendants and their many codefendants in other cases were part of a protest movement whose aim was to keep our elections honest, and to express themselves and their political positions against the election improprieties which are well documented. The United States cannot masquerade its crackdown on advocacy as enforcement of trespass or obstruction laws.

In *CPR for Skid Row v. City of L.A.*, 779 F.3d 1098 (9th Cir. 2015), the U.S. Ninth Circuit Court of Appeals found that a California statute which criminalized disruption of political meetings by "threats, intimidations, or unlawful violence" was unconstitutional as applied to a group's protest of a meeting of public officials and members of the public to discuss conditions in a neighborhood.

Judge Reinhardt, concurring, said that the statute was unconstitutional *both* as applied and *on its face*, because the First Amendment plainly protects some conduct which intimidates or disrupts political meetings in many circumstances.

It is significant that the facts of disruption in *CPR for Skid Row* were far more egregious than those alleged here. The group's members were "chanting loudly in protest of an organized walk by public officials and others through Los Angeles' Skid Row." "They also banged on drums," in some cases within one foot of the officials during the Walk.

Judge Reinhardt pointed to numerous cases where the First Amendment protected extravagant demonstrations amidst legislative or official government hearings or meetings, such as *In re Kay*, 1 Cal. 3d 930, 936, 83 Cal. Rptr. 686, 464 P.2d 142 (1970) (rhythmic clapping during a congressman's speech), *McMahon v. Albany Unified Sch. Dist.*, 104 Cal. App. 4th 1275, 1280—81, 129 Cal. Rptr. 2d 184 (Cal. Ct. App. 2002) (dumping gallons of garbage on the floor during a school board meeting as part of a speech about the problem of litter in the area of the high school), *Saraceni v. City of Roseville*, No. C041085, 2003 Cal. App. Unpub. LEXIS 5692, 2003 WL 21363458, at *2 (Cal. Ct. App. June 13, 2003) (attempting to address the city council and city attorney at a city council meeting after the public comment period had ended), *Norse v. City of Santa Cruz*, 629 F.3d 966, 970 (9th Cir. 2010) (en banc) (giving a silent Nazi salute and whispering to another

meeting attendee in city council meetings), and *Sanchez v. City of Los Angeles*, No. CV 07—5132 GHK (JC), 2011 U.S. Dist. LEXIS 150627, 2011 WL 6951822, at *2 (C.D. Cal. Oct. 31, 2011) (attending a city council meeting with a pillow case, attached to a shirt, that read "CRA Destroys Communities").

Significantly, the alleged conduct of the defendant in this case—even if true—was far less disruptive than the conduct recognized as constitutionally protected in the cases listed above. Defendants did nothing to prevent Congress from concluding, discussing, or voting on any bill or proposal.

**Denial of due process.**

This prosecution is also unconstitutional because Defendants were denied due process of law because Defendants were given no path to challenge the political decree in this case. See *State v. Koenig*, 238 Ore. App. 297, 242 P.3d 649 (Or. Ct. App. 2010), holding an exclusion order unlawful where a defendant was arrested for trespassing upon entering a county building after an order excluding him from the building because the defendant was not provided with any process by which to challenge it. Id. at 655. That is, there were no procedures to "safeguard his liberty interest against the risk of erroneous deprivation." Id. at 657.

Likewise, in *State v. Green*, 157 Wn. App. 833, 239 P.3d 1130 (Wash. Ct. App. 2010) the Washington court reversed the trespass conviction of a parent who had violated a public school's order excluding the parent from her child's school.

5

The court found the conviction unlawful because the exclusion order infringed the parent's statutory right to observe her child's school activities and did not provide any means for an appeal from the order. Id. at 1137.

A person may not be convicted of trespass for failing to comply with an exclusion order from a public agency that violates that person's right to due process. Cf. *State v. Bishop*, 146 Idaho 804, 817, 203 P.3d 1203, 1216 (2009) (an individual who peacefully obstructs or refuses to obey an officer's unlawful directive does not thereby violate statute proscribing resisting and obstructing a public officer); *State v. Gamma*, 143 Idaho 751, 754, 152 P.3d 622, 625 (Ct. App. 2006) (where an individual refuses to obey order or obstructs act of public officer that is contrary to the law, that individual does not violate statute proscribing resisting and obstructing a public officer); *State v. Wilkerson*, 114 Idaho 174, 178, 755 P.2d 471, 475 (Ct. App. 1988) (a person cannot be convicted of a crime for failing to obey police officer's command if that command itself violates the Constitution).

To allow this prosecution to go forward would dangerously chill expression and dissent by the American people. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (applications of vague statutes or prosecutions with uncertain boundaries inevitably lead citizens to steer far wider of the unlawful zone than if

6

the boundaries of the forbidden areas were clearly marked." (internal quotation marks, footnote, and alterations omitted).

**Every court prior to January 6 has recognized that the Capitol is the Peoples' House, and a forum for political advocacy, petitioning, speech, assembly, and expression.**

A long line of cases hold that people have a right to use the Capitol Grounds as a free speech forum. *See Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972). In *Jeannette Rankin Brigade* a special 3-judge panel of the DC District Court held that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making *Jeannette Rankin Brigade* binding precedent. 409 U.S. 972 (1972). Later, in *Community for Creative Non-Violence v. Kerrigan*, the DC Circuit held that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding "a reasonable time, place or manner restriction," a regulation limiting the length of time during which demonstration "props and equipment" may remain on the Grounds). Clearly, therefore, the "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was designed--legislating"--is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." *Jeannette Rankin Brigade*, 342 F. Supp. at 584.

Indeed, in *Jeannette Rankin Brigade*, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion." *Id*. See also, *Lederman v. United States*, 291 F.3d 36 (DC Cir. 2002) (striking down a regulation banning leafleting and other "demonstration activities" on the sidewalk at the foot of the House and Senate steps on the East Front of the Capitol). The *Lederman* Court found that sidewalks around the Capitol are a public forum, and that a regulation banning leafleting and other "demonstration activities" at the foot of the House and Senate steps on the east side of the Capitol is unconstitutional.

Note that courts have held that even the *interior* of the Capitol is an appropriate forum for organized prayer sessions and organized walking through the halls.[1]

---

[1] The First Amendment literally says "Congress shall make no law" restricting speech, advocacy, or petitioning. The government's only path around this problem is the notion that the mere presence of the Vice President in the Capitol on Jan. 6 somehow allows for prosecutions of advocates, protestors or petitioners hundreds of yards away, outside, separated by numerous thick marble walls.

But the Supreme Court has never held that the First Amendment can be evaded simply by a Secret Service proclamation that a protected government official lurks nearby. The government often asserts on Judge Friedman's well-articulated opinion in *Bynum v. U.S. Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000), which the government says classified the interior of the Capitol as a nonpublic forum. In fact, *Bynum* struck down a previous ban on picketing and parading in the Capitol as too broad. See id. (holding groups of visitors have 1st amendment rights to hold nondisruptive prayer sessions in Capitol hallways).

Judge Friedman himself wrote that his conclusion to categorize the inside of the Capitol as a 'nonpublic forum' was "somewhat surprising." Id. at 56 ("Which brings the Court to what may seem a somewhat surprising conclusion that the inside of the United States Capitol is a nonpublic forum for First Amendment forum analysis purposes"). And despite the *Bynum* Court's pronouncement that the inside of the Capitol is a nonpublic forum for protesting, the Court held that some, limited expression, prayer and petitioning is nonetheless permitted inside the Capitol:

> The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve. While the regulation is justified by the need

**No law makes the Capitol a restricted area.  No court case makes the Capitol a restricted area.  No published federal rule or regulation makes the Capitol a restricted area.**

Significantly, no law of Congress makes the Capitol a restricted area.  No detailed court case ever published[2] makes the Capitol a restricted area.  Indeed, these sources of law resoundingly say the opposite.  So how do prosecutors in these cases contend the Capitol or its grounds were restricted areas on Jan. 6?

**Trespass Law requires both proof of notice and proof of actual license to restrict.**

---

> expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as "speechmaking . . . or other expressive conduct. . . ." Traffic Regulations for the Capitol Grounds § 158. Because the regulation's proscriptions are not limited to the legitimate purposes set forth in the statute, it is an unreasonable and therefore an unconstitutional restriction on speech. *See Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc*., 482 U.S. 569, 575 (1987) (general prohibition of First Amendment activity in airport cannot be justified even if airport is nonpublic forum "because no conceivable government interest would justify such an absolute prohibition of speech"). For these reasons, and those discussed in Section II B of this Opinion, the regulation is both unreasonable and unconstitutionally overbroad.

*Bynum*, at 57.
   Judge Friedman also found that the "picketing and parading" ban violated due process because it was vague:  "While there certainly are types of expressive acts that rise to the level of a demonstration, any regulation that allows a police officer the unfettered discretion to restrict behavior merely because it 'conveys a message' or because it has a 'propensity to attract a crowd of onlookers' cannot survive a due process challenge." Id.

> The regulation as written allows a police officer to restrict any sort of expressive conduct when, in the eyes of the particular officer, it might attract onlookers -- without regard to whether it in fact attracts a crowd of onlookers or whether it in fact disrupts or obstructs. The determination of what conduct is prohibited by such a regulation therefore necessarily will vary depending on the subjective judgment of the particular officer regarding what conduct in his or her judgment has a "propensity to attract a crowd of onlookers." Such a regulation does not provide any standard at all. Rather, it "confers on the police a virtually unrestrained power to arrest and charge persons with a violation" and "the opportunity for abuse . . . is self-evident." [citations omitted].
> The virtually standardless, broad discretion given to the Capitol Police by this regulation also causes it to be unconstitutionally vague.

Bynum, at 58-59.

[2] Ironically the only courts that have ever pronounced the Capitol grounds to be a restricted area are some trial courts in Jan. 6 cases.  Most of these rulings are unpublished.

The federal "restricted area" statutes at issue here are analogous to trespassing laws at the state levels. These are derived from ancient common law going back in Anglo-American history for centuries. The basic principles of criminal trespass are enunciated in the Model Penal Code. See, e.g., *State v. Pixley*, 200 A.3d 174 (Vt. 2018). In general, a conviction for trespassing requires <u>two</u> distinct elements: first, the license element—that the person is entering the land "without legal authority" or consent, and second, the notice element—that notice against trespass is provided for the property in question. Id. Said differently, conviction requires <u>proof of both</u> *subjective* notice (the defendant's state of mind) and the *objective* fact of restrictedness. In this case, each element is contested.

It is not enough for "the State to show that defendant should have known he was not licensed or privileged to enter the dwelling." *State v. Fanger*, 665 A.2d 36, 38 (Vt. 1995) (quoting Model Penal Code § 221.2(1) (1962)). The government must prove a <u>defendant actually knew</u>.

The case law regarding the open-public-free-speech-forum area of the Capitol cannot be overcome by mere decree of the Capitol Police, or the Secret Service, or federal prosecutors. The U.S. Capitol is one of America's largest public buildings, with well over 1.5 million square feet, over 600 rooms, and miles

of corridors.³ Previous case law in other federal jurisdictions has invalidated government attempts to extend no-advocacy zones beyond a few feet.

For example, the Supreme Court invalidated attempts to ban protesting within 300 feet of an abortion clinic. *Madsen v. Women's Health Ctr*., 512 U.S. 753, 771 (1994) (finding thirty-six-foot buffer was acceptable). "[C]itizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to freedoms protected by the First Amendment." *Id*. at 774.

**The First Amendment as a Defense to trespass.**

In general, violence is not First-Amendment protected. But trespassing sometimes is. For example, in *People v. Millhollen*, 5 Misc. 3d 810, 786 N.Y.S.2d 703, 194 Ed. Law Rep. 395 (N.Y. City Ct. 2004) a court held that a university student who climbed a tree on a university campus, and remained there after being ordered by a police officer and a university official to descend, was not guilty of trespass, absent evidence that the student's presence in the tree was incompatible with the university's normal activities).

The government contends that there is no First Amendment protection for the thousands of people present on Capitol Grounds on January 6. None. But given the binding case law holding that the Capitol grounds is a public free-speech

---

³ See Architect of the Capitol, "U.S. Capitol Building," https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building (accessed 9/27/2022).

11

forum, the government's claims that the grounds were totally restricted on Jan. 6 must withstand strict scrutiny analysis. And the evidence in this case illustrates the presence of flags, banners, megaphones, and group persuasive chants—all of which are archetypes of protected petitioning and advocacy rather than assaultive militancy.

A policy, law, barrier, or forum restriction that regulates protected speech must meet First Amendment muster, whether or not it also regulates conduct. *See ACLU of Ill. v. Alvarez*, 679 F.3d 583, 602 (7th Cir. 2012) ("When the expressive element of an expressive activity triggers the application of a general law, First Amendment interests are in play."); *Bartnicki v. Vopper*, 200 F.3d 109, 121 (3d Cir. 1999) (rejecting the argument "that a statute that governs both pure speech and conduct merits less First Amendment scrutiny than one that regulates speech alone."). The inquiry "is not whether trespassing is protected conduct," but whether the law contains other restrictions on conduct that also "qualif[y] as protected speech." *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021) (quoting *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1194–96 (10th Cir. 2017) (*W. Watersheds Project I*)).

This conclusion is consistent with Supreme Court precedent which has emphasized that First Amendment analysis applies when speech is implicated by a law even if the law "generally functions as a regulation of conduct." *Holder v.*

*Humanitarian Law Project*, 561 U.S. 1, 27–28 (2010) (emphasis in original). Thus, the erection of barriers on Capitol grounds regulates protected speech and accordingly implicates the First Amendment. Exempting the Jan. 6 demonstration from any First Amendment review could result in the criminalization of core free speech, such as criticism of a politician. *See Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193, 1209 (D. Utah 2017) (observing "[i]f a person's First Amendment rights were extinguished the moment she stepped foot on [a given property], the State could, for example, criminalize any criticism of the Governor, or any discussion about the opposition party, or any talk of politics whatsoever, if done on [a given] property.").

Some acts amount to speech protected by the First Amendment, and may not be prosecuted as trespass, depending on the location of the protest. The Supreme Court of the United States has held that since 'time out of mind,' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). In this regard, the right of free speech attaches to premises which have traditionally served as a place for free public assembly by private citizens. *People v. O'Grady*, 147 Misc. 2d 118, 560 N.Y.S.2d 602 (App. Term 1990). And courts have previously held that the Capitol grounds on all sides of the building are just such a free speech forum. *See Jeannette Rankin Brigade, supra*. The government's claim that all of

the demonstrators on Capitol Grounds on Jan. 6 were "attackers" rather than protestors conflicts with settled First Amendment law.

**A Court Holding that the Hundreds of Protestors on January 6 have no First Amendment Protection will have a Chilling Effect on Fundamental First Amendment Protections.**

Of all the First Amendment cases ever decided by the Supreme Court, the case of *Adderley v. State of Fla.*, 385 U.S. 39, 48 (1966) may provide the clearest path for analysis. In *Adderly*, the Court upheld the trespassing arrest of 13 college students who entered the grounds of the Leon County, Florida jail to protest prior arrests and city segregation policies. The students blocked a driveway to the jail entrance not normally used by the public and refused to disperse after being ordered by sheriff. Significantly, the majority opinion authored by Justice Black indicated that the same facts *would lead to First Amendment protection from a trespass conviction* <u>if the facility had been a capitol with a history of political protest and speech advocacy</u>.

The dissenting opinion in *Adderley v. State of Fla.*, authored by Justice Douglas and joined by Brennan and Fortus, found that the student protestors' trespassing arrests <u>should be overturned on First Amendment grounds</u>. 385 U.S. 39, 48 (1966) (Douglas, J., dissenting). "We do violence to the First Amendment when we permit this 'petition for redress of grievances' to be turned into a trespass action," wrote the dissenters. *Id*. at 52.

14

The parallels between the *Adderly* case and January 6 could not be more compelling. In fact, there was evidence in the *Adderly* case that workers in the jail were obstructed and afraid to leave the jail facility during the protest. And in some ways, the disruption of the Leon County jail by the *Adderly* protestors was less supported by the law than the protests of January 6.[4] Even so, three Supreme Court justices pronounced that the student protestors' conduct was First Amendment protected. "In the first place the jailhouse grounds were not marked with 'NO TRESPASSING!' signs," wrote Douglas, *id*. at 52, and "[o]nly the sheriff's fiat [ordering trespassers to disperse" transformed lawful conduct into an unlawful trespass." *Id*.

Three members of the Supreme Court held in 1966 that protestors who entered the grounds of a jail—which (unlike Capitol Grounds) had never been a forum for free speech—blocked traffic, prevented a worker from leaving, and defied orders from a sheriff to disperse were <u>fully protected</u> by the First Amendment. *And <u>every member of the Supreme Court</u>* held that the First

---

[4] "The fact that no one gave a formal speech, that no elaborate handbills were distributed, and that the group was not laden with signs would seem to be immaterial" to the question of First Amendment protection, wrote the dissent. Justice Douglas wrote that the First Amendment protected the *Adderly* protestors nonetheless. Id. at 51.

15

Amendment would have protected the protestors from a trespassing conviction under the same facts *if the facility had been a capitol rather than a jail*.[5]

Justice Douglas cited numerous Supreme Court cases standing for the proposition that the 'custodian' of public property cannot arbitrarily decide "when public places shall be used for the communication of ideas," e.g., Hague v. C.I.O. 307 U.S. 496 (1939); Schneider v. State of New Jersey, 308 U.S. 147, 163—164; Cantwell v. State of Connecticut, 310 U.S. 296; Largent v. State of Texas, 318 U.S. 418; Niemotko v. State of Maryland, 340 U.S. 268; Shuttlesworth v. City of Birmingham, 382 U.S. 87. "For to place such discretion in any public official, be he the 'custodian' of the public property or the local police commissioner (cf. *Kunz v. People of State of New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280), is to place those who assert their First Amendment rights at his mercy." Id. at 54. "It

---

[5] The Court compared the jail protest with the protest upheld in *Edwards v. South Carolina*, 372 U.S., at 235, 83 S.Ct., at 683 (1963). In *Edwards*, the Supreme Court overturned convictions of protestors at a state capitol who refused commands to disperse.

> In *Edwards*, the demonstrators went to the South Carolina State Capital grounds to protest. In this case they went to the jail. Traditionally, state capitol grounds are open to the public. Jails, built for security purposes, are not. The demonstrators at the South Carolina Capital went in through a public driveway and as they entered they were told by state officials there that they had a right as citizens to go through the State House grounds as long as they were peaceful. Here the demonstrators entered the jail grounds through a driveway used only for jail purposes and without warning to or permission from the sheriff.

Adderly at 41.
The dissent even gently mocked the majority's proffered distinction between jail grounds and legislative grounds. "Would the case be any different if, as is common, the demonstration took place outside a building which housed both the jail and the legislative body? I think not." *Id*. at 53 (Douglas, J. dissenting).

gives him the awesome power to decide whose ideas may be expressed and who shall be denied a place to air their claims and petition their government." Id.

## CONCLUSION

For all the foregoing reasons, defendants move to dismiss this case.

Dated: September 1, 2023                                         Respectfully Submitted,

*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, September 1, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce
